UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:20-cv-02290-JRS-TAB |
| ) | |
| MARK SEVIER, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Mark Johnson is an Indiana prisoner. His habeas petition challenges his rape conviction and habitual offender enhancement under Indiana Case No. 49G01-1106-FB-41966. Mr. Johnson raises several claims in his petition. All but one are procedurally defaulted, and the remaining claim is denied on the merits. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

### I. BACKGROUND

**A. Underlying Criminal Conduct and Trial**

The Indiana Court of Appeals provided the following description of Mr. Johnson's underlying criminal conduct and trial:

> The evidence most favorable to the convictions is that at around noon on June 12, 2011, A.T. agreed over the phone to go to Johnson's home in Indianapolis. A.T. went to Johnson's home hoping to smoke marijuana with him. Johnson told A.T. after she arrived that he did not have any marijuana but that someone else would bring some to the home at a later time. Meanwhile, the two sat on a couch and discussed each other's children. Johnson smoked crack cocaine and drank beer, while A.T. smoked only cigarettes and did not smoke any crack or drink any alcohol.
>
> At some point, Johnson began taking off his clothes. A.T. then stood up, intending to leave, but Johnson grabbed her arm and threw her back on the couch. A.T. began yelling and telling Johnson to stop. Instead, Johnson pulled down A.T.'s pants, held her arms over her head, and had vaginal intercourse with her while she continued begging him to stop. After a period of time, Johnson stopped having intercourse, and A.T. pulled up her pants and ran out of the house. While driving away, planning

on going to a hospital, A.T. saw a parked police car and reported what had happened to the officer.

DNA testing revealed the presence of biological material from A.T. on Johnson's penis and fingers and biological material from Johnson on A.T.'s neck. However, there was no biological material from Johnson recovered from A.T.'s genital area or clothing. Additionally, there was DNA from three unidentified males recovered from the panties A.T. was wearing when she went to the hospital after the rape.

When police questioned Johnson about A.T.'s rape allegation and told him that A.T. had denied smoking crack, Johnson accused her of lying and asked whether A.T. would be tested for drugs. The interviewing officer, Detective Laura Smith, said that A.T.'s blood would be so tested at the hospital. However, this statement was based on Detective Smith's outdated belief that toxicology testing of the victim was standard rape examination protocol when in fact that protocol had been changed and toxicology was no longer performed. Instead, a liquid sample of A.T.'s blood was disposed of, without first being tested for the presence of drugs, after a lab technician placed a sample of the blood on a dry card for DNA testing purposes.

On June 15, 2011, the State charged Johnson with Class B felony rape, Class D felony criminal confinement, and Class A misdemeanor battery. The State later filed an allegation that Johnson was an habitual offender. Before trial, Johnson filed a motion to introduce evidence of the unidentified DNA found in A.T.'s underwear, which the trial court denied. Also before trial, Johnson sought dismissal of the prosecution on the basis that the State had destroyed material evidence, *i.e.* A.T.'s liquid blood, which Johnson claimed could have proven through toxicology testing that A.T. was under the influence of drugs and/or alcohol at the time of the incident, rendering her less credible. The trial court also denied this motion. On November 3, 2011, after a jury trial, Johnson was found guilty as charged, and he admitted to being an habitual offender. The trial court entered judgments of conviction on all three guilty findings and sentenced Johnson accordingly.

*Johnson v. State*, 974 N.E.2d 604, *1-2 (Ind. Ct. App. 2012) ("*Johnson I*").

### B. Direct Appeal

Mr. Johnson raised three issues before the Indiana Court of Appeals: (1) his convictions for rape, criminal confinement, and battery violated Indiana's rules prohibiting double jeopardy; (2) the trial court erred by denying his motion to dismiss for failure to preserve potentially exculpatory evidence, *i.e.* A.T.'s liquid blood, which may have shown evidence of intoxication; and (3) the trial court erred by denying his request to present evidence that A.T.'s injuries (which

included scratches to her skin but no injuries to her genital area) may have resulted from previous sexual activity, which was potentially evidenced by the presence of male DNA in her underwear. Dkt. 8-4, p. 6 (Brief of Appellant).

Mr. Johnson's appeal was granted as to the Indiana double jeopardy claim, and his convictions for criminal confinement and battery were vacated. *Johnson I*, at *3. His appeal was denied as to his failure to preserve evidence claim and his evidence of prior sexual activity claim, and his conviction for rape was affirmed. *Id.* at *4.

Mr. Johnson raised one issue in his petition to transfer to the Indiana Supreme Court: that the trial court erred by denying his motion to dismiss for failure to preserve evidence. Dkt. 8-9, p. 2. His petition to transfer was denied. Dkt. 8-2, p. 5.

### C. Post-Conviction Relief

Mr. Johnson raised five issues in his petition for post-conviction relief: (1) he received ineffective assistance of trial counsel; (2) he received ineffective assistance of appellate counsel; (3) his habitual offender enhancement was erroneous; (4) the introduction of certain evidence was improper; and (5) the probable cause affidavit did not support the rape conviction. Dkt. 8-10, p. 3 (order on post-conviction relief petition). His petition was denied by the Marion County Superior Court. *Id.* at 17.

Mr. Johnson raised one issue before the Indiana Court of Appeals: that he received ineffective assistance of appellate counsel. Dkt. 8-11, pp. 4-5. In support of this issue, he argued that his appellate counsel failed to raise ineffective assistance of trial counsel on direct appeal. *Id.* His appeal was denied. *Johnson v. State*, 138 N.E.3d 972 (Ind. Ct. App. 2019) ("*Johnson II*").

Mr. Johnson raised two issues in his petition to transfer to the Indiana Supreme Court: (1) there was insufficient evidence to support his rape conviction; and (2) there was insufficient

3

evidence to support his habitual offender enhancement. *See generally* dkt. 8-17. Mr. Johnson did not argue that he received ineffective assistance of appellate counsel in his petition to transfer. *Id.* His petition to transfer was denied. Dkt. 8-18.

### D. Habeas Petition

Liberally construed, Mr. Johnson's habeas petition raises six issues: (1) the trial court erred by denying his motion to dismiss for failure to preserve exculpatory evidence; (2) the trial court erred by denying his request to present evidence of A.T.'s prior sexual activity; (3) he received ineffective assistance of appellate counsel; (4) he received ineffective assistance of trial counsel; (5) there is insufficient evidence of his rape conviction; and (6) his habitual offender enhancement is erroneous. Dkt. 5, pp. 1-3.[1]

## II. LEGAL STANDARD

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

---

[1] It is not clear whether Mr. Johnson seeks to raise a claim that his convictions for rape, criminal confinement, and battery violate double jeopardy. *See* dkt. 5, p. 1. To the extent that he seeks to raise this claim, the Court notes that his criminal confinement and battery convictions have already been vacated, and therefore, the claim is **denied as moot**.

4

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The

issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III. DISCUSSION

#### A. Procedural Default

The respondent argues that Mr. Johnson failed to exhaust all the issues in his habeas petition except his claim that the trial court should have granted his motion to dismiss for failure to preserve exculpatory evidence. Dkt. 8, pp. 4-6. The Court agrees.

"To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citation and quotation marks omitted); *see* 28 U.S.C. § 2254(b)(1)(A). To meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). A claim is procedurally defaulted when it "could have been but was not presented to the state court and cannot, at the time

that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992).

The only issue that Mr. Johnson presented through a complete round of state court review is his claim that the trial court erred in denying his motion to dismiss for failure to preserve potentially exculpatory evidence. Dkts. 8-4, 8-9. As to his other claims:

- He appealed the denial of his motion to present evidence of A.T.'s prior sexual history in the Indiana Court of Appeals, but not in the Indiana Supreme Court. *Id.*

- He raised an ineffective assistance of trial counsel claim in his post-conviction relief petition, but not in the Indiana Court of Appeals or the Indiana Supreme Court. Dkts. 8-11, 8-17.

- He appealed the denial of his ineffective assistance of appellate counsel claim in the Indiana Court of Appeals, but not in the Indiana Supreme Court. Dkts. 8-10, 8-11, 8-17.

- He raised a standalone claim about the sufficiency of the evidence for his rape conviction in his post-conviction relief petition and in the Indiana Supreme Court, but not in the Indiana Court of Appeals. *Id.*

- He raised a standalone habitual offender enhancement claim in his post-conviction relief petition and in the Indiana Supreme Court, but not in the Indiana Court of Appeals. *Id.*

In his reply, Mr. Johnson argues that he presented many of his claims through a complete round of state court review by presenting them to the Indiana Court of Appeals, even though he did not present them in his petitions to transfer to the Indiana Supreme Court. *See* dkt. 10, p. 19 (arguing that "[o]nce a petition to transfer is filed, all the issues presented in the Indiana Court of Appeals are before the Supreme Court of Indiana for review."). According to Mr. Johnson, this is because the Indiana Supreme Court reviews all of the appellate briefs before ruling on the transfer

petition. *Id.* at 17-18 (citing the Indiana Supreme Court's order denying transfer). He also points to the State's notice in response to his petition to transfer, which says that Mr. Johnson did not raise issues in his petition to transfer that were not previously raised below. *Id.* at 16 (citing dkt. 10-1, p. 99) (State's Notice Regarding Transfer in post-conviction appeal).

Mr. Johnson's argument is unpersuasive. Indiana Appellate Rule 57 governs the form and content of a petition to transfer. The petition to transfer must include a "Question Presented on Transfer" which is a "brief statement identifying the issue, question, or precedent warranting Transfer." Ind. App. R. 57(G)(1). The petition to transfer must also include "[a]n argument section explaining the reasons why transfer should be granted." Ind. App. R. 57(G)(4). Granting a petition to transfer "is a matter of judicial discretion," and the Indiana Supreme Court has its own criteria for determining when transfer may be appropriate. Ind. App. R. 57(H). The principal criteria include whether the Indiana Court of Appeals' opinion conflicts with existing precedent, involves an undecided issue of law, involves precedent in need of reconsideration, or involves a significant departure from law or practice. *Id.*

Nothing in this Rule or Indiana Supreme Court precedent suggests that filing a petition to transfer automatically raises all the issues raised below in the Indiana Court of Appeals. Indeed, the Indiana Supreme Court has ruled that a party fails to raise an issue on transfer if the issue is not raised in the petition to transfer, even if the party raised that issue below. *See St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 701 n.2 (Ind. 2002); *but see Savage v. State*, 655 N.E.2d 1223, 1224-25 (Ind. 1995) (holding that *after transfer has been granted*, the Indiana Supreme Court has jurisdiction over the entire appeal and has discretion to consider issues that were not raised in the petition to transfer if they were raised below in the Indiana Court of Appeals).

In his direct appeal and post-conviction appeal, Mr. Johnson abandoned most of the issues he had raised below when he filed his petition to transfer. The only exception is his claim that the trial court should have granted his motion to dismiss for failure to preserve exculpatory evidence. Accordingly, all of his other claims are procedurally defaulted.

### B. Actual Innocence

Alternatively, Mr. Johnson argues that he should be allowed to present his procedurally defaulted claims under the actual innocence exception. Dkt. 10, pp. 10-15. His purported evidence of actual innocence includes the forensic report indicating that his DNA was not found in A.T.'s genital area and the forensic report indicating that DNA from other males was found in A.T.'s underwear. *Id.* Regarding the DNA found in A.T.'s underwear, Mr. Johnson argues that his trial counsel should have argued that this evidence was admissible to show "that someone else committed the rape." Dkt. 10, p. 14 (citing Indiana Evidence Rule 412(a)(2) (evidence of a rape victim's prior sexual activity is admissible to show that "some person other than the defendant committed the act upon which the prosecution is founded")).

The "actual innocence" exception is one application of the broader "fundamental miscarriage of justice" exception to procedural default intended to ensure that "federal constitutional errors do not result in the incarceration of innocent persons." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015). To proceed under this exception, Mr. Johnson "must show that in light of new evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* (internal quotations removed). The new evidence must not have been previously considered. *Id.*

Mr. Johnson has not made a showing of actual innocence. The fact that his DNA was not found in A.T.'s genital area was presented to the jury at his trial. Thus, this is not "new evidence."

Also, evidence that DNA from three other males was found in A.T.'s underwear would not prove that "someone else committed the rape," as Mr. Johnson argues. Identity was not an issue at trial. The only issue at trial was consent. Mr. Johnson testified that A.T. was at his home during the rape and that he engaged in sexual activity with her before she left. *See* dkt. 9-7, pp. 117, 145-46 (trial transcript). After A.T. left, she immediately reported to the police that Mr. Johnson had just raped her. *Johnson I*, at *1. Evidence of A.T.'s prior sexual activity would not have proved that another person committed the rape. The evidence would not have exonerated Mr. Johnson, nor would it have been admissible under Indiana Evidence Rule 412(a)(2).

### C. Failure to Preserve Potentially Exculpatory Evidence

The only remaining issue is Mr. Johnson's claim that the trial court should have granted his motion to dismiss based on Detective Smith's failure to preserve A.T.'s liquid blood.

Under existing precedent from the United States Supreme Court at the time of Mr. Johnson's direct appeal, the State's failure to disclose material exculpatory evidence violates the Fourteenth Amendment Due Process Clause, regardless of the State's good or bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). However, when "no more could be said than that [the evidence] could have been subjected to tests, the results of which might have exonerated the defendant," the evidence is considered to be *potentially* exculpatory—rather than *materially* exculpatory—and the defendant has the burden of showing that the State acted in bad faith. *Id.* at 57-58; *Illinois v. Fisher*, 540 U.S. 544, 545 (2004) (holding the same); *see also Connick v. Thompson*, 563 U.S. 51, 77 (2011) (Scalia, J., concurring) (acknowledging *Youngblood* as controlling precedent).

A.T. testified that she was not under the influence of cocaine when she was raped or when she reported the rape to the police. During his interrogation, Mr. Johnson told Detective Smith that

10

A.T. had been intoxicated earlier that day, and he asked her to ensure that A.T. be tested for drugs. Detective Smith failed to ensure the preservation of A.T.'s liquid blood. She attributed this failure to her mistaken belief that an alleged rape victim's liquid blood is automatically tested for drugs and alcohol. The trial court denied Mr. Johnson's motion to dismiss. *See Johnson I*, at *1.

On appeal, Mr. Johnson acknowledged that, under existing United States Supreme Court precedent, A.T.'s liquid blood sample "would be considered only *potentially* useful evidence." Dkt. 8-4, p. 19 (emphasis added). He went on to say, "While it was certainly of such a nature that Mr. Johnson had no means to obtain comparable evidence after it was destroyed, it did not have, on its face, an exculpatory value before it was destroyed by the crime lab." *Id.* Despite this controlling precedent from the United States Supreme Court, Mr. Johnson asked the Indiana Court of Appeals "to find that a different analysis should be applied in cases, as here, where the defendant has made a specific request that evidence be preserved, effectively a *pro se* motion to preserve, in a situation where he himself has no ability to effect preservation of evidence." *Id.*

The Indiana Court of Appeals affirmed. The court correctly identified the controlling precedent in *Youngblood* and its progeny, and it rejected Mr. Johnson's request to adopt his proposed new rule. *Johnson I*, at *4. The court then determined that, "[a]t worst, the State's failure to preserve a sample of A.T.'s liquid blood for possible toxicology testing was negligent. Such failure did not violate Johnson's due process rights." *Id.* (citing *Youngblood*, 488 U.S. at 58).

The Indiana Court of Appeals' holding was not contrary to, or an unreasonable application of, existing United States Supreme Court precedent. To the contrary, A.T.'s liquid blood sample falls squarely within *Youngblood*'s definition of potentially exculpatory evidence, and to prevail on his motion to dismiss, Mr. Johnson needed to prove that Detective Smith acted in bad faith. The court's finding that Detective Smith's conduct was, at worst, negligent, was a reasonable

conclusion based on her testimony that she was mistaken about an outdated policy of testing all alleged rape victims' blood for drugs, which led to her failure to affirmatively act to preserve the evidence. Accordingly, Mr. Johnson's petition for a writ of habeas corpus is **DENIED**.

## IV. CERTIFICATE OF APPEALABILITY

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because reasonable jurists would all agree that Mr. Johnson's claims are procedurally defaulted, that they may not be revived through the actual innocence exception, and that his remaining claim is without merit, no certificate of appealability shall issue.

## V. CONCLUSION

Mr. Johnson's habeas petition is **DENIED**. The Court does not issue a certificate of appealability. The **clerk is directed** to issue a final judgment in accordance with this Order.

**IT IS SO ORDERED**.

Date: 10/22/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MARK JOHNSON
147275
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Tyler G. Banks
INDIANA ATTORNEY GENERAL
tyler.banks@atg.in.gov